## HINDREY V. WILLIAMS.

1. A contract to cut, cure and stack hay on a ranch, at so much per ton, which does not specify what number of tons are to be cut, nor any given number of acres to be mowed, and under which neither the work to be done nor the amount to be paid is in gross, is a separable, not an entire, contract; and, where the hay is burned, the loss falls on the owner, and the contractor, being innocent, can recover for his labor notwithstanding.
2. In such a case it is a fatal defect in a defense which attempts to show that the hay was not well stacked, and had to be restacked by defendant, to fail to show that defendant paid any given sum for the restacking, or that it was worth any given amount.
3. Where a contract by which plaintiff agreed to cut, cure and stack hay on defendant's ranch contains a stipulation that the hay shall be measured within thirty days, and defendant fails to measure it, and it is burned, he is estopped by such default from alleging, by way of defense to plaintiff's claim, that the hay had not been measured.

4. In civil cases, the court, on the recording of the verdict, may allow
   or refuse the jury to be polled, in his discretion; but, if there should
   be any good reason, a request by either party to test the unanimity
   of the jury by a poll should be allowed.

### Appeal from District Court of Weld County.

THIS action was brought by Williams, the appellee, in
the county court of Weld county. The case was after-
wards taken by appeal to the district court, where a trial
was had by a jury. Verdict and judgment in favor of
the plaintiff for $814, with interest at ten per cent. from
September 15, 1883. The complaint is as follows: (1)
That on or about July 20, 1881, plaintiff agreed with de-
fendant to cut, cure and stack grass or hay growing on
defendant's ranch in Weld county, for the wages, price
or sum of $2.75 per ton for every ton so harvested by cut-
ting, curing and stacking; (2) that on or about July 25,
1881, plaintiff commenced said work, and labored at it
steadily with men and machinery until finished, about
September 1, 1881; (3) that, during said time, plaintiff
cut, cured and stacked for defendant, as agreed, twenty-
four stacks of hay, which contained in all two hundred
and thirty-seven and one-half tons of hay by actual
measurement, and also four other stacks not measured,
containing about sixty tons, making in all about two
hundred and ninety-seven and one-half tons of hay har-
vested by plaintiff, as aforesaid; (4) that defendant has
not paid the price of said labor, or any part thereof, or
any sum or sums whatever, for harvesting said two hun-
dred and ninety-seven and one-half tons of hay, according
to agreement or otherwise; (5) jurisdictional averment.
Demand of judgment for $818.12, and costs.

The answer denies all the material allegations of the
complaint, and, for a second defense, the answer alleges:
(1) That defendant says that plaintiff, on or about the
20th day of July, 1881, undertook, promised and agreed
with defendant to cut, cure and make into hay all the

grass that year growing upon defendant's ranch; and, further, to put said hay up, and leave the same in stacks, in a good, thorough and workmanlike manner, so that the same would be well protected and stand safely,— in consideration that defendant would pay him for said work, when completed as agreed, at the rate of $2.75 per ton for so doing; that said agreement was the same referred to in complaint. (2) That plaintiff failed and neglected to carry out, perform or finish the work so by him agreed to be done and performed, in this: said plaintiff, disregarding said contract and agreement, wholly failed to cut, cure or stack an amount of grass that year growing on said ranch of defendant equivalent to and capable of being made into one hundred tons of hay or thereabouts, if properly and in due season cut, cured and stacked, whereby said grass, so neglected by plaintiff, went to waste, and was wholly lost to defendant; and, further, said plaintiff failed and neglected to leave upon said ranch a large portion of the hay cut by him, but negligently and carelessly suffered the same to take fire and burn, and thus become utterly destroyed by and through the negligence of plaintiff and his employees,— said hay, so destroyed by fire, being about one hundred tons. And defendant further says that the hay which was cut and stacked, and left upon said ranch, was not stacked in good, thorough or workmanlike manner; but, on the contrary, was stacked in such a careless and unworkmanlike manner that the major portion and nearly all of said hay so stacked fell down, whereby it became exposed to rain, and became greatly deteriorated in quality and value. (3) That, by reason of the failure of plaintiff to perform his contract and agreement as aforesaid, and his failure to cut a large portion of defendant's grass as agreed, and the negligence of plaintiff in allowing and causing a portion of said hay cut by him to burn, and by his failure to stack said hay left by him on the ranch in a good or workmanlike manner, defendant was

damaged in the sum of $1,000.   (4) Demand of judgment
against plaintiff in the sum of $1,000, and costs.

The terms of the agreement, as shown by the evidence,
are sufficiently stated in the opinion.

Messrs. HAYNES, DUNNING and ANNIS, for appellant.

Mr. JAMES W. McCREERY, for appellee.

ELBERT, J.   This is not the case of an entire contract
"where an entire promise is made on an entire consider-
ation."   It consequently does not fall within the class of
cases cited by counsel for the appellant, where, in case of
loss by fire or otherwise before the work is completed, the
owner loses his property and the laborer his work.   It is
a separable contract.   No given number of tons were to
be cut.   No specific number of acres were to be mowed.
Neither the work to be done nor the amount to be paid
was in gross.   The plaintiff was to "cut, cure and stack
hay upon the defendant's ranch at $2.75 per ton, to be
measured in thirty days."   Of the legal character of such
a contract there can be no difference of opinion.   1 Add.
Cont. 392 et seq.; 2 Pars. Cont. 517 et seq.   Under it the
plaintiff cut, cured and stacked two hundred and ninety-
six tons of hay.   Two hundred and thirty-six tons were
measured, and no controversy arises respecting them.
Sixty tons were destroyed by fire, and the contention is as
to where the loss must fall.   Two points are made by the
appellant: First, that all the hay was not stacked; second,
that it was not measured.   If all the hay cut was not
stacked it would not preclude the plaintiff from recovering
compensation for what was stacked; nor does it appear
that he was allowed to recover for hay unstacked, either
burned or unburned.   If the fact that the sixty tons burned
were not measured could in any case affect the right of
the plaintiff to recover therefor, it can have no such effect
in this case, in view of the evidence showing that the

time in which it should have been measured had expired, and that the default was that of the defendant.

The loss must fall upon the party having the title to the property destroyed. The hay was cut, cured and stacked on the ranch of the defendant. The grass, before the cutting, was the property of the defendant. It was none the less so after it was cut, cured and stacked. The plaintiff had expended labor upon the grass at an agreed price per ton,—had made it into hay,—but he had no property in the product. The legal possession was also that of the defendant, and neither delivery nor acceptance is a feature in the case. If it can be said that the hay, after it was stacked, was to any extent in the care and custody of the plaintiff, the evidence shows that he exercised reasonable diligence and prudence touching its safety, and the jury so found. The plaintiff was entitled to recover for the sixty tons destroyed by the fire.

If the work was not well done, the defendant could recoup his damages; and this he sought to do, under his pleadings, by evidence showing that the meadow was not well cut, and also that the hay was not well stacked. The evidence, however, upon these points, was conflicting, and we see no reason for disturbing the verdict of the jury. There was a fatal defect in the case made by the defendant in this behalf, in this: that, while the evidence tends to show that a portion of the hay was not well stacked, it does not show that the plaintiff paid any given sum for the restacking, or that it was worth any given amount. The jury were left to conjecture how much, if anything, the restacking was worth. In view of this, the objection that the plaintiff, Williams, was permitted to testify "all that was stacked was reported to me, from time to time, as perfectly sound and good," becomes unimportant. If the testimony thus objected to can be taken (which is doubtful) to refer to the character of the stacking, and not to the condition of the hay when stacked, it nevertheless concerns an issue upon

which, as we have seen, the defendant could not recover by reason of his failure to prove any damage.

The second assignment argued by counsel goes to the refusal of the court to poll the jury, before the verdict was recorded, upon the request of the defendant. Upon this point our statute is silent. It provides that the names of the jurors, upon their return into court, shall be called, "and they shall be asked by the court or the clerk whether they have agreed upon their verdict; and, if the foreman answers in the affirmative, they shall, on being required, declare the same;" and, further, that "when the verdict is given, and is not informal or insufficient, the clerk shall immediately record it in full in the minutes, and shall read it to the jury, and inquire of them whether it be their verdict. If any juror disagree, the jury shall be again sent out; but, if no disagreement be expressed, the verdict shall be complete, and the jury shall be discharged from the case." Sections 177, 179, Amended Code.

Upon the right of a party to demand a poll of the jury before the verdict is recorded, the rulings differ in different states. In some of the states, in both civil and criminal cases, it is regarded as a right which may not be denied. *Jackson v. Hawks*, 2 Wend. 619; *Fox v. Smith*, 3 Cow. 23; *James v. State*, 55 Miss. 57; *Johnson v. Howe*, 2 Gilman, 342; *Blackley v. Sheldon*, 7 Johns. 32; *Rigg v. Cook*, 4 Gilman, 336; *Labar v. Koplin*, 4 N. Y. 550; *Hubble v. Patterson*, 1 Mo. 392; *Stewart v. People*, 23 Mich. 76. To some extent these decisions rest upon the proposition that opportunity should be given to the juror to correct a verdict which he has mistaken, or about which, upon further reflection, he has doubt; and it is to be observed that such opportunity is fully provided for by the provisions of the code above quoted. In other of the states it is regarded as a matter resting entirely in the discretion of the court, but which the court will generally allow when there are any circum-

stances of suspicion attending the delivery of the verdict. *Blum v. Pate*, 20 Cal. 70; *Martin v. Maverick*, 1 McCord, 24; *Landis v. Dayton*, Wright (O.), 659; *Rutland v. Hathorn*, 36 Ga. 380; *Fellows' Case*, 5 Greenl. 333; *Com. v. Roby*, 12 Pick. 513; Proff. Jury Trial, 465. It is a matter of practice, and in civil cases we see no reason for holding that either party may demand that the jury be polled as a matter of right. We think that such a request may safely and properly be left as resting in the sound discretion of the court. If there should be any good reason for allowing either party, by a poll, to test the unanimity of the jury, the request should be granted.

The foregoing constitutes all the assignments argued by counsel. The judgment of the court below must be affirmed.

*Affirmed.*